# Matter of Mahvash AKRAM, Respondent

*Decided August 1, 2012*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  An alien who was admitted to the United States as a K-4 nonimmigrant may not adjust status without demonstrating immigrant visa eligibility and availability as the beneficiary of a Petition for Alien Relative (Form I-130) filed by his or her stepparent, the United States citizen K visa petitioner.

(2) A K-4 derivative child of a K-3 nonimmigrant who married the United States citizen K visa petitioner after the K-4 reached the age of 18 is ineligible for adjustment of status because he or she cannot qualify as the petitioner's "stepchild."

FOR RESPONDENT:  David Cook, Esquire, Chicago, Illinois

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Christine M. Young, Assistant Chief Counsel

BEFORE:  Board Panel:  GREER and WENDTLAND, Board Members; DONOVAN, Temporary Board Member.

GREER, Board Member:

In a decision dated May 21, 2010, an Immigration Judge denied the respondent's application for adjustment of status and granted her request for voluntary departure.  The respondent has appealed from that decision and has submitted two motions to remand.  This case addresses the question whether an alien who was admitted to the United States as a K-4 nonimmigrant pursuant to section 101(a)(15)(K)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(K)(iii) (2006), can adjust status without demonstrating immigrant visa eligibility and availability as the beneficiary of an approved immigrant visa petition filed by his or her stepparent, the United States citizen K visa petitioner.  We conclude that the respondent, a K-4 nonimmigrant who was over 18 years of age when her K-3 mother married the K visa petitioner, is ineligible to adjust her status under section 245(a) of the Act, 8 U.S.C. § 1255(a) (2006), because she cannot qualify as the petitioner's "stepchild." Accordingly, the respondent's appeal will be dismissed and her motions to remand will be denied.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent was born on September 18, 1986, in Pakistan.  On July 4, 2005, when the respondent was 18 years old, her mother, a Pakistani national, married a United States citizen.  Subsequent to the marriage, the United States citizen spouse filed a Petition for Alien Relative (Form I-130) and a Petition for Alien Fiancé(e) (Form I-129F) on behalf of the respondent's mother.[1]  On August 18, 2005, he filed a Form I-130 on the respondent's behalf seeking to classify her as the child of a United States citizen for purposes of the issuance of an immigrant visa.  On January 23, 2006, the United States Citizenship and Immigration Services ("USCIS") denied the immigrant visa petition because the respondent did not qualify as a "stepchild" of the petitioner under section 101(b)(1)(B) of the Act.

Although the USCIS had denied the immigrant visa petition, a consular officer at the United States Embassy in Islamabad, Pakistan, issued the respondent a K-4 nonimmigrant visa under section 101(a)(15)(K)(iii) of the Act on February 28, 2006.  The record does not contain evidence relating to the admission of the respondent's mother to the United States, but it appears that the Form I-129F was approved and that she was issued a K-3 nonimmigrant visa.  The respondent was entitled to request a derivative K-4 nonimmigrant visa as a child accompanying or following to join her mother.

When the respondent was 19 years old, she was admitted to the United States as a K-4 nonimmigrant on April 1, 2006, with authorization to remain until March 31, 2007.  On April 24, 2006, the respondent filed an Application to Register Permanent Residence or Adjust Status (Form I-485) with the USCIS, which denied the application on July 31, 2006.[2]  Although the respondent's authorized period of stay has expired, she has remained in the United States in violation of section 237(a)(1)(B) of the Act, 8 U.S.C. § 1227(a)(1)(B) (2006).[3]

---

[1]  The respondent's mother was the spouse, rather than the fiancée, of a United States citizen.  However, the Form I-129F is also used to petition for the issuance of a nonimmigrant visa to an alien who has concluded a valid marriage with a citizen of the United States, is the beneficiary of a pending Form I-130, and seeks to enter the United States to await the approval of such petition and the availability of an immigrant visa.  *See* section 101(a)(15)(K)(ii) of the Act; 8 C.F.R. § 214.2(k)(7) (2012).

[2]  In her motion to remand, the respondent presented a copy of her mother's Permanent Resident Card, which indicates that her mother adjusted status as the spouse of a United States citizen on October 10, 2006.

[3]  Additionally, the respondent's status as a K-4 nonimmigrant automatically terminated 30 days after her application for adjustment of status was denied.  *See* 8 C.F.R. § 214.2(k)(11)(iii).

The respondent was placed in removal proceedings by the issuance of a notice to appear on April 17, 2009. She sought to renew her application for adjustment of status before the Immigration Judge, who denied her adjustment application but granted her request for voluntary departure.

## II. ISSUE

The issue in this case is whether an alien who was admitted to the United States as a K-4 nonimmigrant may adjust status without demonstrating immigrant visa eligibility and availability as the beneficiary of an approved immigrant visa petition filed by the United States citizen K visa petitioner.

## III. K-3 AND K-4 NONIMMIGRANT VISA CLASSIFICATIONS

The K-3 and K-4 nonimmigrant visa classifications, authorized under sections 101(a)(15)(K)(ii) and (iii) of the Act, respectively, were added to the Act in 2000 by section 1103(a) of the Legal Immigration Family Equity Act, Pub. L. No. 106-553, 114 Stat. 2762, 2762A-144 to 2762A-145 (2000) ("LIFE Act"). The purpose of this statute was to allow the spouses of United States citizens, and the children of such spouses, the opportunity to come to the United States while awaiting the approval of their visa petitions. The K-3 visa applies to an alien who

> has concluded a valid marriage with a citizen of the United States who is the petitioner, is the beneficiary of a petition to accord a status under section 201(b)(2)(A)(i) that was filed under section 204 by the petitioner, and seeks to enter the United States to await the approval of such petition and the availability to the alien of an immigrant visa.

Section 101(a)(15)(K)(ii) of the Act. The K-4 visa applies to an alien who "is the minor child of an alien described in clause . . . (ii) and is accompanying, or following to join, the alien." Section 101(a)(15)(K)(iii) of the Act.

Although these new visa categories were added to section 101(a)(15)(K) of the Act, they were completely different from the existing K classifications created in 1970: the K-1 for the fiancé(e)s of United States citizens and the K-2 for the fiancé(e)s' children. *See* sections 101(a)(15)(K)(i), (iii) of the Act. The original K-1 and K-2 visas for fiancé(e)s continue to work mainly as they always did, as explained in *Matter of Sesay*, 25 I&N Dec. 431 (BIA 2011). In fact, because the K-1 and K-2 visa symbols were so well established, the new visa categories were designated K-3 and K-4, even though this numbering did not correspond to the statutory sections. *See* "K" Nonimmigrant Classification for spouses of U.S. Citizens and Their Children Under the Legal

Immigration Family Equity Act of 2000, 66 Fed. Reg. 42,587, 42,588 (Aug. 14, 2001) (Supplementary Information).

Aliens seeking K-3 or K-4 classification must apply at a consular post abroad.[4]  An alien applying for a K-3 visa must establish that he or she is the beneficiary of an approved I-129F petition and a pending I-130 filed by his or her United States citizen spouse and must satisfy the other statutory and regulatory requirements.  *See* 8 C.F.R. § 214.2(k)(7) (2012); 22 C.F.R. § 41.81 (2012).

An alien applying for a K-4 visa must establish that he or she is the "child" of a K-3 visa holder, as defined in section 101(b)(1)(A), (B), (C), (D), or (E) of the Act, and is accompanying or following to join the K-3 parent.[5]  8 C.F.R. § 214.2(k)(3); 22 C.F.R. § 41.81(c).  The K-4 status is "merely a derivative nonimmigrant classification."  66 Fed. Reg. at 42,588-89 (Supplementary Information).  A K-4 nonimmigrant derives status from his or her K-3 parent and is not required to establish a parent-child relationship with that parent's United States citizen spouse to obtain a K visa.  *Id.*; *see also* 8 C.F.R. § 214.2(k)(3); 22 C.F.R. § 41.81(c).  Thus the alien need not be the direct beneficiary of an I-129F or I-130 for purposes of being admitted to the United States on a K-4 nonimmigrant visa.

Once the K-3 or K-4 visa has been issued, the alien can apply for admission to the United States.  A K-3 visa holder is admitted for a period of 2 years, while a K-4 is admitted for a period of 2 years or until that alien's 21st birthday, whichever is shorter.  8 C.F.R. § 214.2(k)(8).  Under certain circumstances set forth in 8 C.F.R. § 214.2(k)(10), a K-4 may extend his period of stay.

In this case, the respondent was properly issued a K-4 nonimmigrant visa.  The respondent's mother met the definition of a nonimmigrant under

---

[4] The former Immigration and Naturalization Service ("INS") determined that nonimmigrant aliens would not be able to change from another nonimmigrant status to K status while in the United States.  66 Fed. Reg. at 42,590 (Supplementary Information).  Applying for a K-3 or K-4 nonimmigrant visa at a United States embassy or consulate is therefore the exclusive means by which an alien may obtain such status.

[5] The provisions of the Child Status Protection Act, Pub. L. No. 107-208, 116 Stat. 927 (2002) ("CSPA"), have *not* been interpreted to apply to aliens applying for K-4 visas.  *See generally* Memorandum from Johnny N. Williams, Exec. Assoc. Comm'r, INS Office of Field Operations, to INS officials (Feb. 14, 2003), *available at* http://www.uscis.gov/files/pressrelease/CSPA2_pub.pdf; Cable from U.S. Sec'y of State to Diplomatic and Consular Posts, para. 31 (Jan. 17, 2003), *available at* http://travel.state.gov/visa/laws/telegrams/telegrams_1369.html?css=print.  An alien who has "aged out," that is, reached the age of 21, is therefore ineligible for a K-4 nonimmigrant visa because he or she is no longer a "child" within the meaning of section 101(b)(1) of the Act.

section 101(a)(15)(K)(ii) of the Act at the time her K-3 visa was issued based on her relationship to her United States citizen spouse. In turn, because the respondent was under the age of 21 at the time, she qualified for a K-4 visa in order to follow or accompany her mother to the United States as a derivative child. *See* sections 101(a)(15)(K)(iii), (b)(1) of the Act.

## IV. K-4 ADJUSTMENT OF STATUS ELIGIBILITY

Like other K nonimmigrants, the K-4 applies for adjustment of status under sections 245(a) and (d) of the Act. However, section 245(a) requires a K-4 applicant to establish that he or she is eligible to receive an immigrant visa and that a visa is immediately available.[6] A K-4 must be the beneficiary of an approved immigrant visa petition filed by his or her K-3 parent's United States citizen spouse to be classified as the petitioner's stepchild.[7] 8 C.F.R. §§ 245.1(i), 1245.1(i) (2012). A K-4 adjustment applicant who is the beneficiary of an approved I-130 visa petition filed by the United States citizen spouse satisfies the statutory requirements of visa eligibility and visa availability. Under section 245(d) of the Act, the K-4 adjusts status on a conditional basis pursuant to section 216 of the Act, 8 U.S.C. § 1186a (2006), if applicable, and may only adjust as a result of the marriage of his or her K-3 parent to the United States citizen who filed the I-129F and the I-130. *See Matter of Valenzuela*, 25 I&N Dec. 867, 869 (BIA 2012).

In this case, the respondent is ineligible for adjustment of status under section 245(a) because a parent-child relationship with her mother's United States citizen spouse has not been established. Her mother married the United States citizen K visa petitioner after the respondent's 18th birthday. Under section 101(b)(1)(B) of the Act, a "stepchild" does not include children who have reached the age of 18 at the time the marriage creating the status of stepchild occurred. The record reflects that an I-130 filed by the United States citizen K visa petitioner on the respondent's behalf was denied in 2006 because she could not qualify as his "stepchild" and a parent-child relationship could therefore not be established.

---

[6] Unlike a K-3 or K-4 visa holder, a nonimmigrant classified as a K-1 fiancé(e) or a derivative K-2 does not obtain an immigrant visa through an I-130. We have recognized that K-1 and K-2 nonimmigrants meet the immigrant visa eligibility and availability requirements under section 245(a) upon satisfying the applicable statutory requirements through a bona fide and timely marriage to the United States citizen K visa petitioner. *See Matter of Le*, 25 I&N Dec. 541, 546 (BIA 2011); *Matter of Sesay*, 25 I&N Dec. at 438-40.

[7] As is the case with other immigrant visa petitions, the provisions of the CSPA apply to an I-130 filed on behalf of a K-4 nonimmigrant by the K-3 parent's United States citizen spouse to classify the K-4 as the petitioner's stepchild. *See generally* section 201(f) of the Act, 8 U.S.C. § 1151(f) (2006); *Matter of Avila*, 24 I&N Dec. 78 (BIA 2007).

## V.  APPELLATE ARGUMENTS

### A.  Adjustment Eligibility

Despite her inability to obtain an immigrant visa as a stepchild of her mother's spouse, the respondent argues that she should be permitted to adjust status without meeting the immigrant visa eligibility and availability requirements imposed by section 245(a) of the Act.  We disagree.  First, the statute requires a K-3 or K-4 visa holder to be the beneficiary of an immediate relative visa petition.  The approval of such an I-130 provides immigrant visa eligibility and availability, as required under section 245(a) for adjustment.

Section 245(d) of the Act, which applies to K nonimmigrants seeking to adjust under section 245(a), does not assist the respondent.  Section 245(d) requires K nonimmigrants to adjust on a conditional basis under section 216 of the Act if the qualifying marriage is less than 2 years old at the time of adjustment.  *See Matter of Sesay*, 25 I&N Dec. at 440-41.  It also provides that adjustment of status can only be based on the relationship to the United States citizen petitioner.  *See Matter of Valenzuela*, 25 I&N Dec. at 869; *Matter of Sesay*, 25 I&N Dec. at 433, 440.  Section 245(d) does not, in itself, provide a mechanism for an alien to adjust status outside of the requirements imposed by section 245(a) of the Act.  Rather, it qualifies section 245(a) by placing additional restrictions on K nonimmigrants.

Second, the respondent's argument does not find support in the legislative history of the LIFE Act.  As its title indicates, section 1103(a) was intended to confer nonimmigrant status to aliens who were "awaiting the availability of an immigrant visa."  *See also, e.g.*, H.R. Rep. No. 106-1048, at 206 (2000), 2001 WL 67919 ("[T]he LIFE Act makes available 'K' nonimmigrant visas to aliens (and their minor children) who have concluded valid marriages with United States citizens, are the beneficiaries of visa petitions, and seek to enter the U.S. to await approval of the visa petitions.").  Nothing in the LIFE Act or its legislative history supports a conclusion that an alien should be permitted to enter the United States to await approval of an I-130 and then be able to adjust when the visa petition is denied.

The Senate Joint Memorandum states that "the new 'K' visa is not intended to be a prerequisite for the admission of citizen spouses, but a speedy mechanism for the spouses and minor children of U.S. citizens to obtain their immigrant visas in the U.S., rather than wait for long periods of time outside the U.S."  146 Cong. Rec. 27,160 (2000) (statement of Senator Kennedy);[8]

---

[8] The LIFE Act and the simultaneously enacted LIFE Act amendments are not accompanied by committee reports on the background and purpose of the provisions.  Nonetheless, the

(continued...)

*see also* H.R. Rep. No. 106-1048, at 206. The Supplementary Information accompanying the "new nonimmigrant classification for spouses and children of U.S. citizens" explains that the LIFE Act addresses the family separation arising from delays in adjudicating visa petitions for spouses and children living abroad, serving "to expedite their entry to the United States." 66 Fed. Reg. at 42,587 (Supplementary Information). Thus, the legislative history reflects that the K-3 and K-4 visas were created to address hardships caused by delays in the visa petition adjudication process when the beneficiary remains overseas waiting to join the petitioner but that there was no intention to eliminate the I-130 requirement.

Third, the respondent's argument does not find support in the regulations. The regulations concerning the adjustment of status of K-3s and K-4s provide in pertinent part as follows:

> An alien admitted to the United States as a K-3 . . . may apply for adjustment of status . . . at any time following the approval of the Form I-130 petition filed on the alien's behalf, by the same citizen who petitioned for the alien's K-3 status. An alien admitted to the United States as a K-4 . . . may apply for adjustment of status . . . at any time *following the approval of the Form I-130 petition filed on the alien's behalf, by the same citizen who petitioned for the alien's parent's K-3 status*.

8 C.F.R. §§ 245.1(i), 1245.1(i) (emphasis added). Thus, these regulations require that the adjustment of K-4 nonimmigrants be predicated on the approval of an immigrant visa petition.

The respondent contends that 8 C.F.R. §§ 245.1(i) and 1245.1(i) are ultra vires and that we should declare them to be invalid and without force of law. However, it is well established that regulations promulgated by the Attorney General are binding on the Board and the Immigration Judges. *See Matter of Fede*, 20 I&N Dec. 35 (BIA 1989). We have no authority to declare regulations to be invalid or constitutionally defective.[9] *See Matter of C-*, 20 I&N Dec. 529, 532 (BIA 1992).

---

(...continued)
Chairman and Ranking Member of the Subcommittee on Immigration of the Senate Committee on the Judiciary, Senators Abraham and Kennedy, provided a joint memorandum concerning the LIFE Act and the Life Act amendments.

[9] The regulations at 8 C.F.R. §§ 245.1(i) and 1245.1(i) were promulgated as the direct result of the LIFE Act. *See* 66 Fed. Reg. at 42,587; *cf. Matter of Torres-Garcia*, 23 I&N Dec. 866, 874 (BIA 2006) (not relying upon regulations that implemented later-repealed statutory provisions). Given that the statute contemplates a separate Form I-130 petition as a prerequisite to the adjustment of K-3 and K-4 visa holders, but not K-1 and K-2 nonimmigrants, the promulgation of regulations requiring only the former and not the latter group of aliens to be I-130 beneficiaries is logical.

As we concluded in *Matter of Sesay*, 25 I&N Dec. at 438, an alien admitted to the United States as a K-1 fiancé(e) of a citizen of the United States who enters into a bona fide marriage with the fiancé(e) petitioner within 90 days is able to seek adjustment of status without demonstrating immigrant visa eligibility and availability through an approved Form I-130. Likewise, an alien who was admitted to the United States as a K-2 and whose alien K-1 parent timely married the United States citizen petitioner after the alien's 18th birthday is not required to demonstrate immigrant visa eligibility and availability through an I-130 in order to adjust status. *Matter of Le*, 25 I&N Dec. 541 (BIA 2011). These principles are based upon the lengthy statutory and legislative history of the K-1 and K-2 visas as well as the regulation at 8 C.F.R. § 214.2(k)(6)(ii). In essence, the statutory and regulatory scheme for the actual fiancé(e)s remains largely intact, as set forth in *Matter of Sesay*. In contrast, the purpose of the K-3 and K-4 visa classifications is to permit the alien to be admitted to the United States pending approval of a visa petition filed after a qualifying marriage has occurred.

Finally, the respondent raises the application of 8 C.F.R. § 214.2(k)(9) in support of her position that she is eligible for adjustment of status. That regulation permits K-4 nonimmigrants to request an employment authorization document. The possibility of obtaining employment authorization during a period of valid nonimmigrant status does not imply that K-4 nonimmigrants are eligible to adjust status in the absence of a showing that an immigrant visa is available to them. The fact that the respondent previously had the privilege of obtaining employment in the United States as a nonimmigrant has no relevance to her eligibility for adjustment of status.

## B. Termination of Proceedings on Equitable Grounds

The respondent also argues that equitable estoppel requires the Immigration Judge to terminate these removal proceedings and that the Department of Homeland Security ("DHS") should be estopped from removing her. In short, she argues that it is unfair that she was admitted to the United States as a K-4 only to be denied a means to adjust her status.

Assuming that equitable estoppel is available against the Government of the United States, the party advancing the argument must show all the traditional elements of estoppel, plus some "affirmative misconduct," before the Government can be estopped from enforcing the law. *Gutierrez v. Gonzales*, 458 F.3d 688, 691 (7th Cir. 2006). We find no "affirmative misconduct" in this case, nor any basis in the principles of equitable estoppel to depart from the requirement that an alien seeking to adjust status as the child of a United States K visa petitioner must meet the definition of a "child" under the Act.

Although the statute and regulations allow a K-4 nonimmigrant who is over 18 at the time of the qualifying marriage to be admitted for a specified period as a nonimmigrant, that does not ensure eligibility to adjust status in the United States. Before she entered the United States, the respondent was placed on notice of the possibility that she would not be eligible for adjustment. The record reflects that on January 23, 2006, the USCIS denied the immigrant visa petition that was filed on her behalf by her mother's spouse, the K visa petitioner.

## VI.  MOTIONS TO REMAND

The respondent has also filed two motions to remand. In her first motion, she requests a remand because the USCIS has approved an immigrant visa petition filed on her behalf by her mother, who is now a lawful permanent resident. *See* section 203(a)(2)(B) of the Act, 8 U.S.C. § 1153(a)(2)(B) (2006). Section 245(d) of the Act and 8 C.F.R. §§ 1245.1(c)(6)(ii) and 1245.1(i) preclude a K-4 visa holder from adjusting on any basis other than the K-3 parent's marriage to the United States citizen who filed the I-129F and the I-130.[10] *Matter of Valenzuela*, 25 I&N Dec. at 869. We therefore find that section 245(d) forecloses the respondent's adjustment eligibility based on the I-130 petition filed by her mother.

In her second motion, the respondent seeks a remand in light of *Matter of Sesay*. As stated above, *Matter of Sesay* and *Matter of Le* recognize that K-1 and K-2 *fiancé(e)* visa holders need not demonstrate immigrant visa eligibility or availability in order to adjust status. In her motion, the respondent argues that she should be given "the very same degree of grace that is afforded to these brethren visa categories."

As discussed above, the legislative history of the LIFE Act, the existing regulations, and the Supplementary Information to the regulations support the conclusion that a K-4 visa holder must demonstrate immigrant visa eligibility and availability to adjust status through an approved Form I-130 petition. *Matter of Sesay* involved the K-1 and K-2 fiancé(e) statutory scheme. The K-1 and K-2 nonimmigrant classifications differ from the K-3s and K-4s, which relate to an existing marital relationship. We therefore do not agree

---

[10]  In implementing the K visa regulations, the former INS stated that the K-3 parent may file a visa petition on the K-4 child's behalf after immigrating. 66 Fed. Reg. at 42,589 (Supplementary Information). This does not alter the K-4's ineligibility for adjustment of status under section 245(d) of the Act. But it does give the K-4 visa holder the opportunity to seek an immigrant visa abroad based on the approved I-130 petition filed by the parent when a visa becomes available.

with the respondent that a remand is warranted in light of *Matter of Sesay.* Accordingly, the respondent's motions to remand will be denied.

## VII.  CONCLUSION

Unlike K-2 nonimmigrants, the K-4 must establish immigrant visa eligibility and availability through an approved Form I-130 visa petition. In order to adjust status, therefore, the K-4 nonimmigrant visa holder must qualify as a stepchild of the United States citizen K visa petitioner, who files an I-129F for the K-3 alien spouse, as well as the Form I-130 for both the K-3 and his or her K-4 derivative child.  Otherwise, the K-4 is ineligible to adjust status in the United States and must pursue an alternative means to obtain an immigrant visa from abroad.

In this case, the respondent was eligible to be admitted as a K-4 nonimmigrant as a derivative of her mother's K-3 status.  However, she is ineligible to receive an immigrant visa on the basis of her familial relationship to the United States citizen spouse of her mother.  Because she had reached the age of 18 at the time of her mother's marriage, she cannot qualify as the "stepchild" of the United States citizen K visa petitioner under section 101(b)(1)(B) of the Act.  Consequently, we conclude that she has not established the required immigrant visa eligibility and availability for adjustment of status.  Accordingly, the respondent's appeal will be dismissed and her motions to remand will be denied.  Since the respondent has presented evidence that she posted the required voluntary departure bond, her 60-day period of voluntary departure will be reinstated.

**ORDER:**  The respondent's appeal is dismissed.

**FURTHER ORDER:**  The respondent's motions to remand are denied.

**FURTHER ORDER:**  Pursuant to the Immigration Judge's order and conditioned upon compliance with conditions set forth by the Immigration Judge and the statute, the respondent is permitted to voluntarily depart the United States, without expense to the Government, within 60 days from the date of this order or any extension beyond that time as may be granted by the DHS.  *See* section 240B(b) of the Immigration and Nationality Act, 8 U.S.C. § 1229c(b) (2006); *see also* 8 C.F.R. §§ 1240.26(c), (f) (2012).  In the event the respondent fails to voluntarily depart the United States, the respondent shall be removed as provided in the Immigration Judge's order.

NOTICE:  If the respondent fails to voluntarily depart the United States within the time period specified, or any extensions granted by the DHS, the respondent shall be subject to a civil penalty as provided by the regulations and the statute and shall be ineligible for a period of 10 years for any further relief under section 240B and sections 240A, 245, 248, and 249 of the Act, 8 U.S.C. §§ 1229b, 1255, 1258, and 1259 (2006).  *See* section 240B(d) of the Act.

WARNING:  If the respondent files a motion to reopen or reconsider prior to the expiration of the voluntary departure period set forth above, the grant of voluntary departure is automatically terminated; the period allowed for voluntary departure is not stayed, tolled, or extended.  If the grant of voluntary departure is automatically terminated upon the filing of a motion, the penalties for failure to depart under section 240B(d) of the Act shall not apply.  *See* 8 C.F.R. § 1240.26(e)(1).

WARNING:  If, prior to departing the United States, the respondent files any judicial challenge to this administratively final order, such as a petition for review pursuant to section 242 of the Act, 8 U.S.C. § 1252 (2006), the grant of voluntary departure is automatically terminated, and the alternate order of removal shall immediately take effect.  However, if the respondent files a petition for review and then departs the United States within 30 days of such filing, the respondent will not be deemed to have departed under an order of removal if the alien provides to the DHS such evidence of his or her departure that the Immigration and Customs Enforcement Field Office Director of the DHS may require and provides evidence DHS deems sufficient that he or she has remained outside of the United States.  The penalties for failure to depart under section 240B(d) of the Act shall not apply to an alien who files a petition for review, notwithstanding any period of time that he or she remains in the United States while the petition for review is pending.  *See* 8 C.F.R. § 1240.26(i).